NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ALLISON WALLACE,<br><br>            Plaintiff,<br><br>v.<br><br>IDEAVILLAGE PRODUCTS CORPORATION,<br><br>            Defendant. | Civil Action No.: 06-cv-5673-JAD<br><br>OPINION |

**DICKSON, U.S.M.J.**

This matter comes before the Court upon Defendant Ideavillage Products Corporation's ("Ideavillage") motion for summary judgment (D.E. No. 61). The Court has reviewed the arguments raised by the parties in their briefs and at its hearing on this motion on July 15, 2014. Upon careful consideration, and for the reasons set forth below, Defendant's motion for summary judgment is **GRANTED**.

## I.  BACKGROUND[1]

Plaintiff, Allison Wallace, is the named inventor of United States Design Patent No. D485,990 ("the '990 patent") for the ornamental design of a "body washing brush." (Defendant's L. Civ. R. 56.1 Statement of Material Facts ("Def.'s 56.1"), D.E. No. 61-2, ¶ 2). The '990 patent was filed on March 17, 2003 and was issued on February 3, 2004. (*Id.*) Defendant is the assignee of United States Design

---

[1] The facts in this section are drawn from the Parties submissions pursuant to Local Civil Rule 56.1. Unless otherwise indicated, the facts are not in dispute.

1

Patent No. D550, 914 ("the '914 patent") for the ornamental design of a "hand held cleaning unit."[2] (Declaration of Jason M. Drangel ("Drangel Decl."), D.E. No. 16-1, ¶ 7; Def.'s 56.1, D.E. No. 61-2, ¶ 3). The '914 patent was filed on March 6, 2006 and was issued on September 11, 2007. (Def.'s 56.1, D.E. No. 61-2, ¶ 3). The subject of this action is Defendant's Spin Spa Product (the "IV Product"), which was covered by the '914 patent. (*See* Def.'s 56.1, D.E. No. 61-2, ¶¶ 1, 3).

On November 27, 2006, Plaintiff, acting *pro se*, initiated the instant action against Defendant, accusing Defendant's Spin Spa Product of infringing her body washing brush design in the '990 patent. (*See* Complaint ("Compl."), D.E. No. 1).

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a "genuine" issue of material fact exists for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the initial burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the movant meets this burden, the non-movant must then set forth specific facts that demonstrate the existence of a genuine issue for trial. *Id.* at 324; *see also Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). Notably, the "evidence of the non-movant is to be

---

[2] Plaintiff alleges "no knowledge of this [fact] and the document speaks for itself." (Plaintiff's Response to Defendant's R. 56.1 Statement of Material Facts and Plaintiff's Supplemental Statement of Disputed Material Facts ("Pl.'s 56.1"), D.E. No. 63-1, ¶ 3). The '914 patent named Ideavillage as the patent assignee. (Ex. 2 to Def's 56.1, D.E. No. 61-5). Therefore, the Court found Defendant to be the owner of the '914 patent.

2

believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Swain v. City of Vineland*, 457 F. App'x 107, 109 (3d Cir. 2012) (stating that the non-moving party must support its claim "by more than a mere scintilla of evidence").

### B. Design Patent

Inventors with a "new, original and ornamental design for an article of manufacture" may obtain a design patent. 35 U.S.C. § 171(a) (2012). Design patents are fundamentally different from utility patents because "[u]tility patents afford protection for the mechanical structure and function of an invention whereas design patent protection concerns the ornamental or aesthetic features of a design." *Carman Industries, Inc. v. Wahl*, 724 F.2d 932, 939 n.13 (Fed. Cir. 1983). Pursuant to 35 U.S.C. § 171 (b), provisions relating to utility patents "shall apply to patents for designs, unless otherwise provided." Thus, as with utility patents, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(c).

To determine if an accused object infringes a design patent, courts apply the following analysis:

> In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear "substantially the same" to the ordinary observer . . . . In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused design with the prior art.

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008). "In other words, there are two levels to the infringement analysis: a level-one or 'threshold' analysis to determine if comparison to the prior art is even necessary, and a second level analysis that accounts for prior art in less obvious

3

cases." *Wing Shing Prods. (BVI) Co. v. Sunbeam Prods, Inc.,* 665 F. Supp. 2d 357, 362 (S.D.N.Y. 2009) *aff'd*, 374 F. App'x 956 (Fed. Cir. 2010).

For the second-level analysis, the test is "whether an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design"—namely, the "ordinary observer test." *Egyptian Goddess*, 543 F.3d at 672. Since "differences between the claimed and accused designs . . . might not be noticeable in the abstract," the background prior art "provides . . . a frame of reference" and "highlight[s] the distinctions between the claimed design and the accused design." *Id.* at 677-678. While examining the novel features of the claimed design remained "an important component of the comparison" in analyzing infringement claims, the ordinary observer test established in *Egyptian Goddess* does not allow "assigning exaggerated importance to small differences between the claimed and accused designs relating to an insignificant feature simply because that feature can be characterized as a point of novelty."[3] *Id.* at 677. Instead, "[a]n ordinary observer, comparing the claimed and accused designs in light of the prior art, will attach importance to differences between the claimed design and the prior art depending on the overall effect of those differences on the design." *Id.*

Finally, the "ordinary observer" test is "designed solely as a test of infringement" and "is not a test for determining validity." *Id.* at 678. Therefore, "the patentee bears the ultimate burden of proof to demonstrate infringement by a preponderance of evidence," whereas the accused infringer bears "the burden of production of . . . prior art" on which the accused infringer elects to rely. *Id.* at 678-79.

---

[3] Prior to *Egyptian Goddess*, the Federal Circuit applied a separate "point of novelty" test from the ordinary observer test and "require[d] the patentee to point out the point of novelty in the claimed design that has been appropriated by the accused design." 543 F.3d at 676. However, a "point of novelty" test imposes problems when multiple points of novelty are identified and the accused of design "does not copy all of the points of novelty, even though it may copy most of them and even though it may give the overall appearance of being identical to the claimed design." *Id.* at 677. Moreover, application of a "point of novelty" test may draw the court's attention on "nettlesome and ultimately distracting issues as whether a new combination of old design features could constitute one or more 'points of novelty'." *Wing Shing Prods. Co.*, 665 F. Supp. 2d. at 361.

## III. DISCUSSION AND ANALYSIS

As a threshold matter, Plaintiff owns a design patent, not a utility patent. U.S. Design Patent No. D485,990 (filed Mar. 17, 2003). Therefore, the scope of the protection offered by her patent covers only the novel ornamental features of the "Body Washing Brush" as depicted in the '990 patent. Plaintiff does not have any ownership right to the functional nature of the "Body Washing Brush."

The Federal Circuit strongly discourages the construction of a design patent through a detailed verbal description of the claimed design, since "a design is better presented by an illustration than it could be by any description and a description would probably not be intelligible without the illustration." *Egyptian Goddess*, 543 F.3d at 679 (internal citations and quotation marks omitted). Although district courts may find it "helpful to point out . . . various features of the claimed design as they relate to the accused design and the prior art," and courts may still exercise their discretion regarding the level of detail in verbal description, the general rule is that "the illustration in the drawing views is its own best description." *See id.* at 679-680. Following *Egyptian Goddess*, courts have generally relied on patent drawings to construe design claims. *See, e.g., Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010); *Blackberry Limited v. Typo Products LLC*, No. 14-cv-00023 (WHO), 2014 WL 1118689 (N.D. Cal. Mar. 28, 2014); *Wing Shing Prods. Co.*, 666 F. Supp. 2d 357. For the foregoing reasons, this Court will conduct the analysis based on illustrations.

### A. Level One: Side-by-Side Analysis

Defendant argues that the claimed design and the accused design are plainly dissimilar without consulting any prior art. (Defendant's Brief in Support of Motion for Summary Judgment ("Def.'s Mot. Br."), D.E. No. 61-1, at 13-14). Plaintiff argues that the claimed design and the accused product are not sufficiently distinct. (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n. Br."), D.E. No. 63, at 5). The two designs are presented below:



Defendant points out six differences between the two designs:[4] 1) '990 patent has a straight handle, while the IV Product has a bent or curved handle; 2) '990 patent has a finger grip with a hill and valley design, while IV Product has no such finger grip; 3) '990 patent has a flat threaded opening at the base of the handle, while IV Product has a closed pointed end with an aperture where a rope can be attached; 4) '990 patent has a round head with a two tiered brush, while IV product has an oblong head without a two tier brush; 5). '990 patent has a protrusion at the back of the head, while IV Product has a smooth back without any protrusion; and finally, 6). '990 patent has no decoration at the back of the handle, while IV product has an oval at the neck of the handle and an oval grip in the back of the handle. (*Id.* at 15-20). In response, Plaintiff argues that "the differences . . . Defendant proffers are inconsequential to the overall designs" and that there are "striking similarities between the two designs." (Pl.'s Opp'n Br., D.E. No. 63, at 6).

---

[4] Defendant also argues that the claimed design is a shower attachment with a hollow housing, where "the end of the handle is designed to receive a hose or a water source." (Def.'s Mot. Br., D.E. No. 61-1, at 14). In contrast, the accused product is a battery operated brush with "sealed housing and the end of the handle cannot be attached to a hose or water source". (*Id.*) The Court finds that the difference, although plain and apparent, concerns the function of the product, therefore, is not within the scope of the design patent protection.

Pursuant to the teaching of *Egyptian Goddess*, District Courts have granted summary judgment based solely on comparison between accused and patented designs, without referring to prior art. *See, e.g., Voltstar Technologies, Inc. v. Amazon.com, Inc.*, No. 13 C 5570, 2014 WL 3725860, at *2-4 (N.D. Ill. Jul. 28, 2014); *Sofpool LLC v. Kmart Corp.*, No. S–10–3333 (LKK), 2013 WL 2384331, at *1 (E.D. Cal. May 30, 2013); *Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc.*, No. 06–cv–995, 2009 WL 691594, at *7 (N.D. Tex. Mar. 16, 2009); *Rainworks Ltd. v. Mill–Rose Co.*, 622 F. Supp. 2d 650, 656 (N.D. Ohio 2009); *HR U.S. LLC v. Mizco Int'l, Inc.*, No. CV-07-2394, 2009 WL 890550, at *13 (E.D.N.Y. Mar. 31, 2009). Here, the Court acknowledges manifest differences in the overall appearance of '990 patent and the IV product. Indeed, a comparison supports a finding that these two designs are sufficiently distinct and Ms. Wallace cannot, as a matter of law, prove that the designs appear substantially the same. To the ordinary observer, in other words, the two designs do not look substantially the same.

### B. Level Two: Prior Art Comparisons

In an effort to assure a fair and complete decision on this record, the Court will take the further step, also taught by *Egyptian Goddess*, of comparing the accused and claimed design with the prior art. *See* 543 F.3d. at 676. Ms. Wallace initiated this matter without an attorney. For various procedural reasons, the case was delayed. In 2011, this Court concluded Ms. Wallace, a pro se plaintiff, would be better served by the sua sponte appointment of counsel. The parties have appeared for several settlement conferences and counsel for both parties have patiently and with appropriate diligence, litigated this matter. Accordingly, I have concluded that the second level of analysis is appropriate and necessary to clarify and fully explicate the Court's findings and conclusions. Therefore, we move to the level-two analysis.

As pointed out by Defendant, "the general concept of a brush with a handle is covered in numerous expired patents" (Def.'s Mot. Br., D.E. No. 61-1, at 2). The Court finds that, since the marketplace for brushes with handles is rather crowded, the spirit of *Egyptian Goddess* will be better served by introducing prior art into the analysis. *See* 543 F.3d. at 676-77 ("[I]t can be difficult to answer the question whether one thing is like another without being given a frame of reference."). This is especially true when "a field is crowded with many references relating to the design . . . ." *Id.* at 676; *cf. Wing Shing Prods. Co.*, 665 F. Supp. 2d at 363 ("[I]n a cluttered world of the drip-coffeemakers, it seems senseless to attempt to determine whether the ordinary observer would confuse two designs without looking to the prior art for a point of reference."); *Fanimation, Inc. v. Dan's Fan City, Inc.*, No. 08-cv-1071, 2010 WL 5285304, at *3 (S.D. Ind. Dec. 16, 2010) ("[T]he need to review prior art is especially acute where, as here, the prior art is fairly robust.").

Defendant set forth over 170 patents as examples of prior art, and identified eight of them in its brief in support of motion for summary judgment. (Transcript of July 15, 2014 Proceeding ("Jul. 15 Tr."), D.E. No. 66, at 19, ¶ 2; Def.'s Mot. Br., D.E. No. 61-1, at 21-24, 31). The primary prior art is a utility patent—United States Patent No. 4,417,826 ("the '826 Patent"). (*Id.* at 21-24). The '826 Patent was issued in 1983 and was entitled "Liquid Driven Rotary Brush With Liquid Soap Feeder". U.S. No. 4,417,826 (filed Dec. 24, 1981). The '826 patent (the prior art), the '990 patent (Plaintiff's patent) and the IV Product (the accused design) are shown below:

| '826 Patent | Plaintiff's '990 Patent | IV Product |



Plaintiff's '990 Patent displays significant similarities with the design of the '826 Patent. Among other things, each design has a rounded head and a straight handle with "hill and valley" finger grip. Each design has a round protrusion on the backside of the rounded head.

*Egyptian Goddess* abolished the element-by-element analysis. *See* 543 F.3d. at 671. Instead, the new analysis examines the design as a whole by requiring the fact-finders to "attach importance to differences between the claimed design and the prior art depending on *the overall effect* of those differences on the design." 543 F.3d. at 677 (emphasis added). The claimed design here is strikingly similar to the prior art, specifically the '826 patent. "And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Id.* at 676. The similarities between the '990 claimed patent and the '826 prior art patent are remarkable. Those similarities highlight the difference between the claimed patent and defendant's '914 patent, or IV product.

In light of the similarities between the '826 patent and the '990 patent, the Court concludes that no reasonable ordinary observer, familiar with the prior art, would be deceived into believing the IV Product is the same as the design depicted in the '990 patent.

## IV. CONCLUSION

For the foregoing reasons, Idealvillage Products Corporation's Motion for Summary Judgment (D.E. No. 61) is **GRANTED**. An appropriate form of Order accompanies this opinion.

Joseph A. Dickson, U.S.M.J.